## DE MAYO COALING CO. v. MICHENER STOWAGE CO.

(District Court, S. D. New York. May 1, 1915.)

PATENTS ⟨key⟩328—VALIDITY AND INFRINGEMENT—APPARATUS FOR COALING SHIPS.

The De Mayo patent, No. 797,364, for an apparatus for coaling ships, was not anticipated, and discloses invention, as evidenced in part by its capacity to work under all weather conditions, which has given it great commercial success; also *held* infringed.

In Equity. Suit by the De Mayo Coaling Company against the Michener Stowage Company. On final hearing. Decree for complainant.

Isaac B. Owens, of New York City (Nathan Cohen, of New York City, of counsel), for complainant.

Charles S. Champion, of New York City, for defendant.

AUGUSTUS N. HAND, District Judge. The patent in question was granted to Louis A. De Mayo, on August 15, 1905, United States letters patent No. 797,364, and is for coaling vessels. The complainant relies upon claim 7 of the patent, which reads as follows:

"In an apparatus for coaling ships, the combination of a frame and elevating means thereon, means for driving the elevating means, the driving means being mounted on the frame, means mounted on the ship and connected with the upper part of the frame to suspend the same from the ship, and guy devices at each side of the frame; said devices being in connection with the frame and with the ship."

A prior patent was granted to Johannes Bennik, under United States letters patent No. 674,753, on May 21, 1901. The specification in the letters patent states that:

"This invention has relation to elevators, and more particularly to bucket and similar elevators ordinarily employed in handling coal, grain, and like substances, and more especially adapted for transferring such substances from the hold of a vessel to a storage building or to a vehicle."

The first claim, which is reasonably typical of the Bennik patent, is for:

"A pendulous bucket elevator, comprising a head and leg, a bucket band pulley in said head, a like pulley at the lower end of the leg, a motor for the pulley in said head, and means for supplying motive power thereto from a source distant therefrom, said elevator head provided with means for suspending the same from a flexible support, for the purpose set forth."

Another prior patent, United States 676,075, granted to Alexander MacDougall on June 11, 1901, is stated in the specification to relate to mechanism for unloading ore and coal from the holds of vessels to docks, cars, etc. Claim 1 of this patent sets forth:

"The combination of an elevator leg pivoted over a vessel, an endless bucket elevator within the leg, means for operating the elevator, means for supporting the leg in a vertical position, means for raising and lowering the leg, a conveyer, connecting the out-take of the leg to a fixed discharge, a flexible means for supporting the conveyer in a normally horizontal position, and means for swinging the intake of the leg over the cargo. * * * *"

The invention covered by the patent in suit consists of the combination of (1) a frame; (2) elevating means thereon; (3) means mounted on the frame for driving the elevator; (4) means mounted on the ship for suspending the apparatus; (5) guy devices at each side of the frame in connection with the frame and with the ship.

Complainant's. counsel urges that the prior patents do not include any such guy devices as appear in the patent in suit and that the elements in combination constitute a patentable invention. He further urges that the problem of coaling a ship from a barge, which the patent in suit successfully solved, is much more difficult than the problem of raising coal from the hold of a ship and conveying it to a dock, or of lowering it from a dock to the hold of a vessel. These things, he says, are all that Bennik and MacDougall attempted to accomplish by their inventions. It is doubtless true that it is easier to raise coal from the hold of a large vessel, because there is in such case little rocking by the waves and tides. In the MacDougall patent, however, the diagram shows a barge being unloaded upon a dock. The apparatus is erected upon the dock, and is therefore steady; but the movement of the barge would be as unsteady as the conditions of the waves and tides might warrant. There would be consequent danger of collision between the apparatus and the barge, so that the problem was much the same as in the cause under consideration.

The Bennik patent, perhaps, contained all the elements of the patent in suit except the guy devices. The British patent No. 11,903, to Reginald Haddan, granted in 1902, seems to contain substantially the same elements as that of Bennik. Flexibility in respect to movement in a vertical direction is affected by the suspension of the frame by a block and fall to prevent it from breaking through the bottom of the barge in case the latter should suddenly rise in the sea. This characteristic the Bennik patent and the Haddan patent each possessed. The British patent No. 4,434, to Archibald Thompson, also showed a similar method of flexible suspension of the elevator from a ship to a barge. Guy devices to prevent lateral swinging are found in the MacDougall patent, though there they are attached to the barge from which the material is to be raised. In the patent in suit there are guy devices attached to the frame and the barge to direct and steady the former, but additional pivoted guy rods run between the ship and the barge. It is urged that if the latter guy rods contribute substantially to the use of the complainant's apparatus, and if any further guy devices than the guy ropes attached to the barge are important to prevent lateral motion, they could be so easily applied by one skilled in the art that they are not to be regarded as an element of the invention. In other words, the defendant says that the flexible mobility of the apparatus appears in the means of suspension found in the Haddan, Thompson, Bennik, Mac-Dougall, and other inventions, and that the method of steadying by a guy device to prevent movement in a lateral direction is found in the MacDougall patent, and is so simple, moreover, as to be apparent to any one.

The fact remains, however, that no evidence is offered to show that the devices covered by the Bennik, MacDougall, Haddan, or Thompson

patents have ever proved a commercial success in coaling ships, while the complainant's device has, so far as the evidence discloses, revolutionized the art. The MacDougall device was apparently adequate, when taken by itself, to raise coal; but the method of flexibly steadying and directing the apparatus shown in complainant's device is more simple, in that the apparatus requires no structure for suspension, is readily attached to the ship, and maintained in flexible operation at an angle which both the expert, Ashley, and the text-writer, Zimmer, at page 9 of his book on Mechanical Handling of Materials, insist is essential for unloading coal. The Bennik device on its face was only intended for coaling where the conditions were practically stationary and required no especial adaptation of the apparatus to the swaying motion of a coal barge loading a ship. Moreover, the structure of the coal buckets appears less substantial and less fitted for digging into the coal than in the patent in suit. The MacDougall apparatus seems less flexible, is certainly more complicated, and not as well adapted for attachment to a ship.

It is insisted by the defendant that complainant's guy devices form no useful part of its apparatus and are not in fact employed by it when coaling ships. These devices are not mentioned in complainant's printed catalogue for the trade, nor do they appear in the photographs of the coal elevator with which this catalogue abounds. Moreover, defendant introduced some evidence of use on the part of complainant without any guy devices. It is quite probable, however, that the guy devices may be absolutely necessary when coaling is done in somewhat rough water, and that the great commercial success of complainant's mechanism is due to its capacity to work under all sorts of conditions. No explanation is offered for the great commercial success of complainant's coal elevator. So far as the proof goes, it was the first mechanism practically to solve the problem of loading coal from barges to ships. By means of these elevators the largest ocean liners can be coaled with 8,000 or 9,000 tons of coal inside of 24 hours, and the art has apparently been revolutionized. By reason of this fact, and the apparent adaptation of all the elements set forth in claim 7 to the very useful result attained, I think the success is reasonably to be attributed to all these elements in co-operation.

As was said by Mr. Justice Bradley in Loom Co. v. Higgins, 105 U. S. 591, 26 L. Ed. 1177:

"Now that it has succeeded, it may seem very plain to any one that he could have done it as well. This is often the case with inventions of the greatest merit. It may be laid down as a general rule, though perhaps not an invariable one, that if a new combination and arrangement of known elements produce a new and beneficial result, never attained before, it is evidence of invention."

There can be no doubt whatever that all the elements described in claim 7 were never united before, and, though they were all known in the prior art, their "combination and arrangement [produced] a new and beneficial result never attained before. * * *" I therefore hold that the patent as embodied in claim 7 is valid.

The next question to be considered is whether defendant's apparatus

227 F.—57

constitutes an infringement. The question of infringement is determined by whether defendant's apparatus contains the equivalent of the guy devices embraced in complainant's claim. The guy rods designated by the number 16 in the patent in suit tend to prevent the elevator frame from swinging in a lateral direction, and also prevent it from swinging out from the ship beyond a distance measured by the length of these rods. They slide up and down the elevator frame, as the angle formed between the frame and the ship increases or diminishes, and thus adjust themselves to the position of the frame. The defendant's mechanism, instead of employing guy rods, uses tackle which assist in suspending the apparatus, but are hung from such a position that they not only suspend, but steady, and prevent lateral swinging, as well as swinging out from the ship. These tackle, I think, furnish a mechanical equivalent of the guy rods, which is sufficient to prevent undue lateral motion of the apparatus and hold the triangular device through which the elevator slides from swinging out from the ship. Moreover, claim 7 of the patent in suit does not mention guy rods, but speaks of "guy devices," so that ropes, instead of rods, if attached to the ship to steady and prevent lateral motion of the elevator, would come within the direct language of the claim.

If the defendant's apparatus can be successfully operated by mere vertical suspension from a ship without employing tackle so hung as to prevent the lateral swinging, which complainant's apparatus was designed to avoid, the defendant can use it without infringing; but defendant's present device, in my opinion, infringes.

A decree should follow for an injunction and accounting.